**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| SYED RAHMAN, MARK WEYERMULLER, and the ILLINOIS RENTAL PROPERTY OWNERS ASSOCIATION | Civil Action No. 21-4299 |
| Plaintiffs, | |
| v. | |
| CENTERS FOR DISEASE CONTROL AND PREVENTION, UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES, XAVIER BECERRA, in his official capacity as Secretary of Health and Human Services, ROCHELLE P. WALENSKY, in her official capacity as Director of the Centers for Disease Control and Prevention, UNITED STATES DEPARTMENT OF JUSTICE, and MERRICK GARLAND, in his official capacity as Attorney General of the United States, | **COMPLAINT** |
| Defendants. | |

## INTRODUCTION

The Centers for Disease Control and Prevention ("CDC") has once again asserted the power to regulate any aspects of the U.S. economy it wishes, this time defying a majority of the U.S. Supreme Court. This latest order, like those before it, oversteps the CDC's statutory authority. The Supreme Court noted this overstep in *Alabama Association of Realtors v. HHS*, 141 S. Ct. 2320, 2320–21 (2021), in which

1

Justice Brett Kavanaugh opined that the CDC had "exceeded its existing statutory authority by issuing a nationwide eviction moratorium[.]" Therefore, to extend the eviction moratorium beyond July 31, 2021, the CDC requires "clear and specific congressional authorization (via new legislation) . . . to extend the moratorium past July 31." *Id*. Congress did not act, but the CDC issued a new moratorium anyway.

A unanimous panel of the Sixth Circuit twice concluded that an eviction moratorium does not fall within the CDC's statutory powers under the Public Health Service Act, 42 U.S.C. 264(a), upon which the CDC relied. *Tiger Lily, LLC v. United States HUD*, 992 F.3d 518 (6th Cir. 2021) (motion for stay); *Tiger Lily, LLC v. United States HUD*, No. 21-5256, 2021 U.S. App. LEXIS 21906, 2021 WL 3121373 (6th Cir. July 23, 2021) (merits). The Sixth Circuit noted, "[a]gencies cannot discover in a broadly worded statute authority to supersede state landlord-tenant law." 2021 U.S. App. LEXIS 21906 at *9. Put more simply, "the CDC cannot [unilaterally] nationalize landlord-tenant law." *Id*. at *10. But the CDC's new moratorium again does just that.

Alternatively, even if 42 U.S.C. 264(a) gives the CDC the power to enact the Eviction Moratorium, that delegation violates the nondelegation doctrine, violates the fundamental right of access to the courts, exceeds the federal government's powers under the Constitution, and violates the Tenth Amendment. Plaintiffs seek declaratory and injunctive relief to put an end to the CDC's overreach.

## JURISDICTION AND VENUE

1.      This Court has jurisdiction over this case under 28 U.S.C. § 1331 because Plaintiffs' claims arise under the Administrative Procedures Act (APA) and the United States Constitution. *See* 5 U.S.C. § 702.

2.      This Court has the authority to grant declaratory relief and to vacate and set aside the Eviction Moratorium under the Declaratory Judgment Act, the APA, and this Court's inherent equitable powers. *See* 28 U.S.C. §§ 2201, 2202; 5 U.S.C. §§ 702, 706.

3.      Venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this district and a substantial part of the property that is the subject of the action is situated in this district. Venue is also proper under 28 U.S.C § 1391(e)(1)(B) because the defendants are officers, employees, and agencies of the United States and a substantial part of the events or omissions giving rise to the claims occurred in this district and a substantial part of property that is the subject of the action is situated in this district. *See also* 5 U.S.C. § 703 (venue for actions under the Administrative Procedure Act are generally proper in "a court of competent jurisdiction").

## PARTIES

4.      Plaintiff Illinois Rental Property Owners Association is a nonprofit located in Lake County, Illinois.

5.      Plaintiff Mark Weyermuller is an individual who owns and manages real property located in Cook County, Illinois.

6.     Plaintiff Syed Rahman is an individual who owns and manages real property located in Will and DuPage Counties in northern Illinois.

7.     Defendant United States Department of Health and Human Services ("HHS") is an agency of the United States government.

8.     Defendant Xavier Becerra is the Secretary of HHS and is sued in his official capacity.

9.     Defendant United States Centers for Disease Control and Prevention is an agency of the United States government.

10.     Defendant Rochelle P. Walensky is the Director of the CDC and is sued in her official capacity.

11.     United States Department of Justice ("DOJ") is an agency of the United States government.

12.     Defendant Merrick Garland is Attorney General for the DOJ and is sued in his official capacity.

**FACTS**

13.     To address the economic distress of millions of Americans due to COVID-19, Congress passed the federal Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), a $2.2 trillion economic stimulus bill, in March 2020.

14.     The CARES Act provided, *inter alia*, for a 120-day federal eviction moratorium, through July 24, 2020, for properties covered by federal assistance programs or subject to federally-backed loans. *See* CARES Act § 4024, Pub. L. 116-

36, 134 Stat. 281 (2020). The CARES Act eviction moratorium expired by operation of law on July 24, 2020.

15.    On September 4, 2020, the CDC issued a "Temporary Halt in Residential Evictions to Prevent the Further Spread of COVID-19." *See* 85 Fed. Reg. 55,292. This action prohibited landlords nationwide from evicting certain tenants until December 31, 2020 ("Eviction Moratorium") regardless of whether a federal loan was involved.

16.    Acting without explicit statutory authorization when issuing the Eviction Moratorium, the CDC relied upon Section 361 of the Public Health Service Act, 42 U.S.C. § 264 and a related regulation, 42 C.F.R. § 70.2.

17.    The Public Health Service Act at 42 U.S.C. § 264(a) provides, in relevant part:

> The Surgeon General, with the approval of the Secretary, is authorized to make and enforce such regulations as in his judgment are necessary to prevent the introduction, transmission, or spread of communicable diseases from foreign countries into the States or possessions, or from one State or possession into any other State or possession. For purposes of carrying out and enforcing such regulations, the Surgeon General may provide for such inspection, fumigation, disinfection, sanitation, pest extermination, destruction of animals or articles found to be so infected or contaminated as to be sources of dangerous infection to human beings, and other measures, as in his judgment may be necessary.

The Federal Regulations, at 42 C.F.R. § 70.2 provide as follows:

> Whenever the Director of the Centers for Disease Control and Prevention determines that the measures taken by health authorities of any State or possession (including political subdivisions thereof) are

> insufficient to prevent the spread of any of the communicable diseases from such State or possession to any other State or possession, he/she may take such measures to prevent such spread of the diseases as he/she deems reasonably necessary, including inspection, fumigation, disinfection, sanitation, pest extermination, and destruction of animals or articles believed to be sources of infection.

18.     To continue many of the programs instituted under the CARES Act and address the ongoing economic effects related to COVID-19, the Consolidated Appropriations Act, 2021, Pub. L. 116-260, was signed into law on December 27, 2020, which, *inter alia*, extended the CDC eviction moratorium until January 31, 2021.

19.     On January 29, 2021, immediately after President Joe Biden took office, the CDC extended and modified the eviction moratorium order until March 31, 2021. Temporary Halt in Residential Evictions to Prevent the Further Spread of COVID–19, 86 Fed. Reg. 8020, 8020-25 (Feb. 3, 2021).[1]

20.     On March 31, 2021, the CDC yet again modified and further extended the eviction moratorium until June 30, 2021. Temporary Halt in Residential Evictions to Prevent the Further Spread of COVID–19, 86 Fed. Reg. 16731, 16731-38 (Mar. 31, 2021).[2]

21.     On June 28, 2021, the CDC extended the moratorium for another month—until July 31, 2021—saying that this one-month extension was intended to

---

[1] https://www.govinfo.gov/content/pkg/FR-2021-02-03/pdf/2021-02243.pdf

[2] https://www.govinfo.gov/content/pkg/FR-2021-03-31/pdf/2021-06718.pdf

be a final extension. *Temporary Halt in Residential Evictions to Prevent the Further Spread of COVID–19*, 86 Fed. Reg. 34010, 34010-18 (June 28, 2021).[3]

22.     The CDC's eviction moratorium was challenged before the U.S. District Court for the District of Columbia, which granted expedited summary judgment to the plaintiffs. *Ala. Ass'n of Realtors v. United States HHS*, No. 20-cv-3377 (DLF), 2021 U.S. Dist. LEXIS 85568, 2021 WL 1779282 (D.D.C. May 5, 2021). The district court then stayed its own ruling pending appeal, a stay which the D.C. Circuit upheld. *Ala. Ass'n of Realtors v. United States HHS*, No. 21-5093, 2021 U.S. App. LEXIS 16630 (D.C. Cir. June 2, 2021).

23.     On June 29, 2021, a majority of the justices of the U.S. Supreme Court agreed with the District Court's decision to strike down the CDC's Moratorium. 141 S. Ct. at 2320–21. Four justices voted to grant an emergency application to vacate the stay. A fifth justice, Justice Kavanaugh, issued a concurrence concluding the moratorium exceeded the limits Congress placed on the CDC's authority, but keeping the moratorium in place based on his balancing of the equities. The Court's order indicates that a majority of justices agreed that the CDC lacked the authority to implement a nationwide eviction moratorium. *Id*.

24.     President Biden and Speaker Nancy Pelosi then attempted but failed to gather sufficient votes in the House of Representatives to modify the CDC's statutory authority to extend the moratorium.

---

[3] https://www.govinfo.gov/content/pkg/FR-2021-06-28/pdf/2021-13842.pdf

25.     Nevertheless, after President Biden, the White House press secretary, and CDC all publicly stated the CDC lacked the legal authority to put a new eviction moratorium in place, on August 3, 2021, the CDC once again halted residential evictions. Temporary Halt in Residential Evictions to Prevent the Further Spread of COVID–19, 86 Fed. Reg. 43244, 43244 (Aug. 6, 2021).[4] Although the new Eviction Moratorium is limited to areas with "substantial" or "high" rates of community transmission of COVID, approximately 90 percent of the U.S. population will fall under the order which is essentially the same order that the Supreme Court considered in *Alabama Ass'n of Realtors*.

26.     The August 3, 2021 Eviction Moratorium states that a property owner shall not "evict" a "covered person" "while COVID–19 transmission is substantial or high and the relevant state, county, locality, or territory has provided a level of public-health protections below the requirements listed in this Order." *Id.* at 43251. It defines a "covered person" as "any tenant, lessee, or resident of a residential property" who presents to the property owner "a declaration under penalty of perjury indicating that:

> (1)     The individual has used best efforts to obtain all available governmental assistance for rent or housing;
>
> (2)     The individual either (i) earned no more than $99,000 (or $198,000 if filing jointly) in Calendar Year 2020 or expects to earn no more than $99,000 in annual income for Calendar Year 2021 (or no more than $198,000 if filing a joint tax return), (ii) was not required to report any income in 2020 to the U.S. Internal Revenue Service, or (iii) received an Economic Impact Payment (stimulus check).

---

[4] https://www.govinfo.gov/content/pkg/FR-2021-08-06/pdf/2021-16945.pdf

(3)     The individual is unable to pay the full rent or make a full housing payment due to substantial loss of household income, loss of compensable hours of work or wages, a lay-off, or extraordinary out-of-pocket medical expenses;

(4)     The individual is using best efforts to make timely partial rent payments that are as close to the full rent payment as the individual's circumstances may permit, taking into account other nondiscretionary expenses;

(5)     Eviction would likely render the individual homeless—or force the individual to move into and reside in close quarters in a new congregate or shared living setting—because the individual has no other available housing options; and

(6)     The individual resides in a U.S. county experiencing substantial or high rates of community transmission levels of SARS–CoV–2 as defined by CDC.

*Id.* at 43245 (footnotes omitted). The Eviction Moratorium purports to impose stiff criminal penalties on property owners that violate the order, including fines of up to $100,000 ($250,000 if a death results) and up to one year in jail. *Id.* at 43252.

27.     According to a recent news report from the ABC7 television station's website, the CDC considers Cook County, Illinois, to be a place of substantial or high community transmission of COVID.[5]

28.     In fact, the CDC currently classifies 70 Illinois counties as "high" transmission and 27 more as "substantial" transmission, meaning 97 of the 102

---

[5] Cate Caugurian, *CDC COVID risk map shows Cook among Chicago area counties with 'substantial' COVID-19 transmission*, ABC7 (July 29, 2021), https://abc7chicago.com/illinois-covid-mask-dupage-county-requirement-will/10916408/.

counties in Illinois are covered by the order, including all of the major population centers like Cook, DuPage, Lake, Will, and Kane counties.[6]

29.     Though Illinois currently has in place an eviction moratorium from the Governor, it is set to expire on August 31, 2021, and the Governor has publicly stated he will not renew it.[7]

30.     The CDC's new Eviction Moratorium imposes requirements on property owners that are more stringent than state or local law imposes.

31.     The Eviction Moratorium exceeds the CDC's statutory authority because Section 361 of the Public Health Service Act contains no authority to adopt a nationwide moratorium on evictions. Congress foreclosed the CDC from adopting a nationwide eviction moratorium in Section 361 and by allowing the CARES Act's narrower eviction moratorium to expire after 120 days.

### Plaintiff Syed Rahman

32.     Plaintiff Rahman moved to the United States in 2010 to pursue the American Dream. He became a United States citizen in 2013.

33.     Upon moving to America, he started to invest his retirement in rental housing. He used his pension funds to invest in ten properties that he uses to provide

---

[6] https://covid.cdc.gov/covid-data-tracker/#county-view

[7] "Governor Pritzker Announces Next Round of Rental Assistance as Eviction Moratorium Phases Out," Press Release from the Governor's Office (July 14, 2021), https://www.illinois.gov/news/press-release.23570.html ("On July 23, the Governor will issue an Executive Order that allows eviction filings against covered persons to begin on August 1. The current prohibition on enforcement of eviction orders entered against covered persons will remain in place until August 31. Enforcement of eviction orders entered against covered persons will be allowed after August 31.").

rental housing to tenants. He has developed a network that helps his business run smoothly, including a real estate lawyer, a real estate agency, and a handyman.

34. Rahman uses his properties to provide housing to tenants in Will County and DuPage County in Illinois. These properties mostly consist of small residential townhomes.

35. Rahman's hard work and the risks he took to develop this small real estate portfolio have paid off because he is able to use the rents his tenants pay to sustain his retirement. Additionally, he uses the rents to pay the property taxes, Home Owners Association fees, and maintenance costs of these properties.

36. Rahman's tenants make less than $99,000 a year.

37. Rahman expects the Eviction Moratorium will prevent him from evicting tenants who refuse to pay rent. Rahman has had at least two tenants ask him for rental relief due to financial hardship while eviction moratoriums have been in place. One of those tenants asked Rahman for rental relief in May 2021 due to financial hardship and still owes back rent. The Eviction Moratorium has caused Rahman to accept requests for rent relief that he otherwise would not have accepted. As a result, the Eviction Moratoriums have harmed his business in the past and are likely to do so in the near future.

### Plaintiff Mark Weyermuller

38. Weyermuller is a shareholder of five limited liability companies that own rental properties in Chicago, Illinois. Those five rentals provide housing for about 200 tenants.

11

39.    Weyermuller is also one of the managers of those rentals.

40.    Many of Weyermuller's rentals are mortgaged.

41.    Weyermuller relies on the rents he collects from these tenants to pay down mortgages on some or all of these properties.

42.    Most or all of Weyermuller's tenants make less than $99,000 a year.

43.    Throughout his career as a real estate investor, Weyermuller has had to evict tenants for nonpayment of rent.

44.    Since March 2020, several of Weyermuller's tenants have asked for discounts or rent reductions because of financial issues related to COVID. Plaintiff has often accepted those requests and reduced rent for those affected tenants.

45.    The CDC's new Eviction Moratorium imposes requirements on property owners that are more stringent than state or local law imposes.

46.    Weyermuller expects the Eviction Moratorium will prevent him from evicting tenants who refuse to pay rent. The Eviction Moratorium has caused Weyermuller to accept requests for rent reductions that he otherwise would not have accepted. As a result, the Eviction Moratoriums have harmed his business in the past and are likely to do so in the near future.

## Plaintiff Illinois Rental Property Owners Association

47.    Plaintiff Illinois Rental Property Owners Association ("IRPOA") is a statewide nonprofit that exists to "promote the interests of persons, firms, and corporations who develop, own, or manage residential rental housing; to inform

12

members about current issues and interests, including legislative activities; and to conduct such activities as are necessary to carry out the goals of the Association."[8]

48.     IRPOA is an umbrella organization of thirteen independent real estate investor associations located throughout Illinois. These thirteen associations elect the IRPOA's board of directors. The board of directors consists of members drawn from these thirteen associations. The thirteen associations pay membership dues to IRPOA.

49.     The thirteen independent associations include in their membership approximately 1,000 property owners who provide housing to the public by renting their properties to tenants. Many of the members own multiple units. Combined, these individual members own approximately 10,000 units throughout Illinois. The majority of these units are leased as residential housing. A majority of the tenants living in the rentals belonging to the Association's members make less than $99,000.

50.     Many of the property owner-members in the thirteen independent associations have received from their tenants' statements sworn under penalty of perjury claiming they qualify for eviction protection under either the state or federal eviction moratoriums.

51.     The members of IRPOA's associations range from large corporate management companies to small, "mom and pop" owners of duplex homes. Though all owners are hurt by the moratorium, the punch hits smaller owners especially

---

[8] Illinois Rental Property Owners Association, https://www.irpoa.org/content.aspx?page_id=22&club_id=633958&module_id=79036 (last visited Aug. 9, 2021).

hard. In the words of one Brookings Institution report, "without rental income, a significant number of noncorporate, 'mom and pop' landlords—who may be coping with their own unemployment or additional expenses related to the COVID-19 pandemic—will also struggle to pay their mortgages, utilities bills, property taxes, maintenance costs, and other property-related expenses."[9]

52.     The Brookings report continues, "The loss of rental income under the eviction moratorium represents a significant income shock for smaller landlords of modest means. Our analysis finds that 40 percent of residential property units are owned by individual investor landlords. Among those owning residential investment property, roughly a third are from low- to moderate-income households; property income constitutes up to 20 percent of their total household income. Without rental assistance, tenants and smaller landlords alike will continue to struggle to make ends meet."[10]

53.     A recent CNBC report illustrates the economic impact of the Moratorium on IRPOA's constituents: "The majority of the nation's landlords are individual investors. They own about 23 million units in 17 million properties,

---

[9] Kristen Broady, Wendy Edelberg & Emily Moss, "An eviction moratorium without rental assistance hurts smaller landlords, too," Brookings Institution (Sept. 21, 2020), https://www.brookings.edu/blog/up-front/2020/09/21/an-eviction-moratorium-without-rental-assistance-hurts-smaller-landlords-too/.

[10] *Id.*

according to the U.S. Census. More than 6 million renter households are behind on rent, also according to the Census. Landlords have next to no recourse."[11]

## CAUSES OF ACTION

### COUNT I
### The Eviction Moratorium Exceeds the CDC's Statutory Authority.

54. The allegations contained in all preceding paragraphs are incorporated herein by reference.

55. Under the APA, a court must "hold unlawful and set aside agency action . . . found to be . . . in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. § 706(2)(C).

56. The Eviction Moratorium exceeds the CDC's authority under Section 361 of the Public Health Service Act. 42 U.S.C. § 264. Section 361 does not authorize the CDC to make a decision of such economic and political significance.

57. The Court should hold unlawful and set aside the Eviction Moratorium because the CDC acted "in excess of" its statutory authority. 5 U.S.C. § 706(2)(C).

### COUNT II
### The Eviction Moratorium violates the nondelegation doctrine found in Article 1, Section 1 of the U.S. Constitution because it is an unconstitutional exercise of legislative power.

58. The allegations contained in all preceding paragraphs are incorporated herein by reference.

---

[11] Diana Olick, "'The eviction moratorium is killing small landlords,' says one, as ban is extended another month," CNBC.com (June 25, 2021), https://www.cnbc.com/2021/06/25/the-eviction-moratorium-is-killing-small-landlords-says-one.html.

59.     The U.S. Constitution provides that "[a]ll legislative Powers herein granted shall be vested in a Congress of the United States." U.S. Const. art. I, § 1. Under the nondelegation doctrine, Congress cannot transfer legislative power to the Executive Branch. Acts of Congress must supply an intelligible principle to guide the Executive Branch's enforcement discretion.

60.     Even if the CDC is correct that Section 361 of the Public Health Service Act, 42 U.S.C. § 264 delegates it authority to impose eviction moratoriums, that delegation violates Article I's Vesting Clause and the separation of powers because Congress delegated legislative power to the CDC with no intelligible principle to guide its discretion.

61.     Accordingly, the Eviction Moratorium must be held unlawful and set aside under 5 U.S.C. § 706.

## COUNT III
### Deprivation of the fundamental right of access to the courts

62.     The allegations contained in all preceding paragraphs are incorporated herein by reference.

63.     A court must "hold unlawful and set aside agency action . . . found to be . . . contrary to constitutional right, power, privilege, or immunity." 5 U.S.C. § 706(2)(B).

64.     The U.S. Constitution safeguards the right of access to courts for the redress of grievances. That right is grounded in the Article IV Privileges and Immunities Clause, the First Amendment Petition Clause, the Fifth Amendment Due Process Clause, and the Fourteenth Amendment Equal Protection, and Due Process

Clauses. This right is violated when an official action frustrates a plaintiff's ability to file and prosecute suits.

65.     The Eviction Moratorium prohibits Plaintiffs from accessing state and federal courts to pursue evictions under state law and authorizes federal criminal penalties against Plaintiffs if they do so. Defendants, by issuing and enforcing the Eviction Moratorium, have deprived Plaintiffs of their right of access to courts.

66.     Accordingly, the Eviction Moratorium must be held unlawful and set aside under 5 U.S.C. § 706.

## COUNT IV
### The eviction moratorium exceeds the limited enumerated powers of the federal government in the U.S. Constitution.

67.     The allegations contained in all preceding paragraphs are incorporated herein by reference.

68.     A court must "hold unlawful and set aside agency action . . . found to be . . . contrary to constitutional right, power, privilege, or immunity." 5 U.S.C. § 706(2)(B).

69.     "The Constitution creates a Federal Government of enumerated powers." *United States v. Lopez*, 514 U.S. 549, 552 (1995).

70.     The "powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people." U.S. Const. amend. X.

71.     The Constitution does not delegate to the federal government the power to modify, suspend, or abrogate real estate leases.

72.     Even if 42 U.S.C. § 264(a) could be construed as authorizing the CDC to enact the Eviction Moratorium, such a moratorium exceeds the federal government's limited enumerated powers under the U.S. Constitution.

73.     Accordingly, the Eviction Moratorium must be held unlawful and set aside under 5 U.S.C. § 706.

## COUNT V
### The Eviction Moratorium violates the Tenth Amendment and principles of federalism.

74.     The allegations contained in all preceding paragraphs are incorporated herein by reference.

75.     A court must "hold unlawful and set aside agency action . . . found to be . . . contrary to constitutional right, power, privilege, or immunity." 5 U.S.C. § 706(2)(B).

76.     The Tenth Amendment to the U.S. Constitution provides: "The powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people."

77.     The federal government violates the Tenth Amendment when it attempts to modify, suspend, or abrogate state law in areas where states have historically exercised their police powers exclusively or predominately. *See Bond v. United States (Bond II)*, 572 U.S. 844, 878-79 (2014) (Scalia, J., concurring) ("Suppose by some forced constructions of its authority (which indeed cannot easily be imagined) the Federal Legislature should attempt to vary the law of descent in any State; would it not be evident that . . . it had exceeded its jurisdiction and infringed upon that of

the State?") (quoting *The Federalist* No. 33, at 206 (C. (Rossiter ed. 1961) (A. Hamilton)).

78.     Landlord-tenant laws governing real property, and laws relating to non-impairment of contracts are areas that have historically been understood to lie primarily within the domain of state law. Indeed, the Constitution's specific grant of power to the federal government over properties that it owns implies that the federal government lacks a general power to modify, suspend, or abrogate state laws concerning real property. *See* U.S. Const. art. IV, § 3, cl. 2 ("The Congress shall have Power to dispose of and make all needful Rules and Regulations respecting the Territory or other Property belonging to the United States . . . ."). Similarly, the fact that the Constitution bars states from impairing contracts shows the framers never expected that the federal government would exercise powers that might impair private contracts. *See* U.S. Const. art. I, § 10, cl. 1 ("No State shall . . . pass any . . . Law impairing the Obligation of Contracts . . .").

79.     The Eviction Moratorium is an illegal and unconstitutional usurpation of Illinois state law by a federal agency. This usurpation violates the Tenth Amendment's reservation of powers to the States in regard to the maintenance of

their judiciary and the ability to govern the ownership and possession of real property within its borders.

80.     Accordingly, the Eviction Moratorium must be held unlawful and set aside under 5 U.S.C. § 706.

## PRAYER FOR RELIEF

Plaintiffs request that this Court:

a.      Enter a declaration, order and judgment that the CDC's eviction moratorium is unlawful;

b.      Enter a declaration, order and judgment that the CDC's eviction moratorium is unconstitutional;

c.      Enter a permanent nationwide injunction enjoining Defendants from enforcing the CDC's eviction moratorium;

d.      Award Plaintiffs their reasonable attorney fees and costs, pursuant to 28 U.S.C. § 2412, or any other applicable authority; and

e.      Any other relief this Court deems just and proper.

Dated: August 12, 2021                    Respectfully submitted,


                                          /s/ Daniel R. Suhr
                                          Daniel R. Suhr (WI No. 1056658)
                                          Liberty Justice Center
                                          141 W. Jackson Street, Suite 1065
                                          Chicago, Illinois 60604
                                          Telephone (312) 637-2280
                                          Facsimile (312) 263-7702
                                          dsuhr@libertyjusticecenter.org

                                          *Attorneys for Plaintiff*